# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-689

BERTHA GRUVER

VERSUS

THE KROGER COMPANY, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-2563
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED.**

**James E. Hopkins**
**208 E. Napoleon Street**
**Sulphur, LA   70663**
**(337) 527-7071**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Bertha Gruver**

**Christopher P. Ieyoub**
**Plauche, Smith & Nieset, LLC**
**Post Office Drawer 1705**
**Lake Charles, LA   70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **The Kroger Company**
     **John Duke**

**Janice M. Reeves**
**Maricle and Associates**
**8545 United Plaza Boulevard, Suite 350**
**Baton Rouge,   LA 70809**
**(225) 924-9585**
**COUNSEL FOR DEFENDANT/APPELLEE:**
   **Assembled Products Corporation**

AMY, Judge.

The plaintiff appeals the trial court's granting of the defendants' motions for summary judgment and the dismissal of the plaintiff's claims for injuries she sustained when her electric grocery cart allegedly malfunctioned while grocery shopping. For the following reasons, we affirm.

### Factual and Procedural Background

On March 12, 2001, the plaintiff, Bertha Gruver, visited the Kroger Grocery Store in Lake Charles, Louisiana, to shop for groceries. The plaintiff, who was seventy-three years old at the time, used one of the motorized carts, the Mart Cart, provided by Kroger. She alleges that, while she was shopping, she could not reach a can of food while sitting in the cart. In an attempt to reach the can, the plaintiff asserts that she dismounted the Mart Cart and placed her left foot on the ground, and while she had one foot on the cart and another on the ground, the cart rolled forward causing her to fall.

The plaintiff[1] filed suit on May 21, 2001, against The Kroger Company (Kroger), and John Duke, Kroger's manager on duty at the time, alleging that they were liable for her damages under various theories of liability. The plaintiff later amended the petition and alleged that Assembled Products Corporation (APC), the manufacturer of the Mart Cart, and Mart Cart, Inc.[2] were liable under the Louisiana Products Liability Act (LPLA), La.R.S. 9:2800.51, *et seq.*

Kroger and Duke filed a motion for summary judgment seeking dismissal of the plaintiff's claims and asserting that the plaintiff's "accident and alleged injuries

---

[1] Initially, the plaintiff filed suit individually and as the natural tutor of her son. Due to her son's death, the plaintiff amended her petition to add the estate of her son and her daughter, as an heir of her son's estate, as plaintiffs. For the purposes of this opinion, the plaintiffs will be collectively referred to as the "plaintiff."

[2] The record contains no information as to whether Mart Cart, Inc. answered the petition.

were caused solely by her own acts of negligence, and not in any way by any fault or negligence of Kroger or John Duke." APC also sought summary judgment, asserting that the plaintiff would be unable to meet her burden of proof at trial under the LPLA.

Ultimately, the trial court granted the defendants' motions for summary judgment. The plaintiff appeals.

**Discussion**

*Standard of Review*

A motion for summary judgment is reviewed on appeal under the de novo standard of review. *Hogg v. Chevron USA, Inc.*, 09-2632 (La. 7/6/10), 45 So.3d 991. The reviewing court uses the same criteria as the trial court to determine whether summary judgment is appropriate, *i.e.*, whether there is a genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *See* La.Code Civ.P. art. 966; *Hogg*, 45 So.3d 991. Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). "[A] 'genuine issue' is a 'triable issue,' or one as to which reasonable persons could disagree. A 'material fact' is a fact, the existence or non-existence of which may be essential to a cause of action under the applicable theory of recovery." *Hogg*, 45 So.3d at 997 (citations omitted), citing *Champagne v. Ward*, 03-3211 (La.1/19/05), 893 So.2d 773. In proving entitlement to summary judgment:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one

2

or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).

*Motion for Summary Judgment - Kroger and Duke*

The plaintiff contends that the trial court erred in granting Kroger's and Duke's motion for summary judgment. In her petition, the plaintiff asserted causes of action against Kroger and Duke under La.Civ.Code arts. 2317 and 2322 as well as under La.R.S. 9:2800.6. The plaintiff also alleged that these defendants could be liable under theories of failure to supervise or provide instruction with regard to the cart. In their motion, Kroger and Duke addressed each of these theories of liability and contended that the plaintiff would not be able to prove the necessary elements of each action.

A plaintiff's burden in a claim against merchants for a fall on the premises is dictated by La.R.S. 9:2800.6[3], which provides:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of any injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk was reasonably foreseeable.

---

[3] Although initially couched as a claim pursuant to La.Civ.Code art. 2317 and La.Civ.Code art. 2322, the proceeding against Kroger and Duke arises from a fall on the merchant premises. Accordingly, the applicable law is La.R.S. 9:2800.6.

3

(2)     The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3)     The merchant failed to exercise reasonable care.   In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C.     Definitions:

(1)     "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.  The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2)     "Merchant" means one whose business is to sell goods, foods, ware, or merchandise at a fixed place of business.  For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D.     Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

This particular case is specifically controlled by Paragraph B insofar as the plaintiff's claim stems from a fall.  *See Smith v. Toys "R" Us, Inc., et al.*, 98-2085 (La. 11/30/99), 754 So.2d 209.  As explained in *White v. Wal-Mart Stores, Inc.*, 97-393 (La. 9/9/97), 699 So.2d 1081, a plaintiff must prove each of the above elements in order to prevail.

Given the above standard, it is clear that the plaintiff failed to demonstrate the existence of genuine issues of material fact in several regards.  First, La.R.S. 9:2800.6(B)(1), requires the existence of an unreasonable risk of harm and that the risk of harm was reasonably foreseeable.  In support of their motion, Kroger and Duke entered Duke's affidavit into evidence wherein he explained that, immediately

4

following the accident, he tested the cart's brakes and found no problems. Further, he stated that, the day after, he sent the scooter to Kroger's mechanic who found no safety hazards. Even if this latter statement was ignored due to lack of personal knowledge as urged by the plaintiff, she failed, as the party who would bear the burden of proof at trial, to present further evidence creating a genuine issue regarding the presence of an unreasonable risk of harm.

Instead, she introduced her own version of events and offered the affidavit and evaluations of Dr. Randy Price, an engineer with specialized training in instrumentation, sensors, electronic and power machinery. Dr. Price performed two evaluations on the Mart Cart for the purposes of determining whether the cart had "possible design flaws and wear." In an evaluation dated January 12, 2002, Dr. Price stated that the Mart Cart was in disrepair and was nearing the end of its operating life. Yet, he stated, that the "cart is still functioning as originally delivered from the factory (with the exception of normal wear)." In reference to the Mart Cart's brake system, Dr. Price stated that its type of braking system was "basic but reliable, and is used on many older types of braking systems." Dr. Price opined that the machine's "failure during the accident" could have been caused by caps, likely not part of the original design, which were placed on the seat safety switch. He explained that the presence of the caps "can result in a joint that looks like it is making connection, when actually it is not." However, he further stated: "Still, when tested during the evaluation session, the joints were making connection and the seat safety switch was working properly. These statements only suggest the potential for an unreasonable risk of harm and do not rise to the level of creating a genuine issue in this regard.

Finally, even if an unreasonable risk of harm existed, the plaintiff failed to establish that any risk posed by the Mart Cart was reasonably foreseeable. Duke explained that, by virtue of his position as Kroger's manager, he had "never had any prior complaints from store patrons as to the operation of the brakes of the motorized grocery cart [the plaintiff] fell from." The plaintiff put on no evidence indicating that she would be able to establish otherwise.

We note that the plaintiff's lack of evidence regarding a reasonably foreseeable risk also reveals another critical factor under La.R.S. 9:2800.6(B)(2) on which summary judgment was appropriate. Under that subparagraph, the plaintiff would bear the burden of proving at trial that the merchant had *actual or constructive notice* of the condition which caused the damage, *prior to the occurrence*.[4] In short, the plaintiff's evidence failed to contravene that of the defendants in any way.

Also, to the extent that the plaintiff claimed that Kroger and Duke were liable for failure to provide instruction on the cart's operation or for failure to train their employees, she failed to put forth evidence in opposition to Duke's statement that: "All Kroger employees are available and willing to instruct and/or assist Kroger store patrons with the use of motorized grocery carts." The claimant's assumption that a lack of any further instructions caused her accident is only an assumption or an allegation. Instead, the plaintiff stated in her deposition that she did not ask for instruction on the cart's operation.[5] In short, the plaintiff's evidence falls short of

---

[4] Furthermore, La.R.S. 9:2800.6(C)(1) requires proof of a temporal element - that the condition "existed for such a period of time." *See Babin v. Winn-Dixie Louisiana , Inc.,* 00-78 (La. 6/3/00), 764 So.2d 37, citing *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 699 So.2d 1081. As explained above, the plaintiff did not produce sufficient evidence to demonstrate that there is a genuine issue of material fact as to whether Kroger or Duke had notice of any alleged defect.

[5] Kroger and Duke also point to the plaintiff's deposition as support that the plaintiff's conduct, as opposed to the Mart Cart, was the cause of her injuries. In her deposition, the plaintiff testified that she did not read any of the instructions or labels on the scooter on the day in question

establishing that she would be able to prove her burden of proof at trial.

*Summary Judgment - Assembled Products*

The plaintiff contends that the trial court erred in granting APC's motion for summary judgment, asserting that APC "did not present any evidence to controvert the existence of the defects of design of their Mart Cart or that they provided gave [sic] adequate warnings of its design flaws which created an unreasonable danger of harm to those who used their product."

The LPLA, La.R.S. 9:2800.51 *et seq.*, provides the exclusive theories of manufacturers' liability for damages caused by their products. *Lavergne v. America's Pizza Co., LLC*, 02-889 (La.App. 3 Cir. 2/5/03), 838 So.2d 845. A manufacturer shall be liable for damage caused by an unreasonably dangerous characteristic of a product when such damage arises from a reasonably anticipated use of the product. La.R.S. 9:2800.54(A). A product may be unreasonably dangerous in: (1) its construction or composition; (2) its design; (3) failure to adequately warn; or (4) its nonconformity to an express warranty. La. R.S. 9:2800.54(B). The burden is on the plaintiff to prove that a product is unreasonably dangerous. La.R.S. 9:2800.55(D). "Defects are not presumed to be present by the mere happening of an accident." *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1364 (La.1992), citing *Broussard v. Pennsylvania Millers Mut. Ins. Co.*, 406 So.2d 574 (La.1981).

Unreasonably Dangerous in Design

Louisiana Revised Statutes 9:2800.56 provides:

---

and that she did not ask any Kroger employee for instruction on how to use the Mart Cart. Further, the plaintiff testified that she lifted her left foot off the brake and onto the floor aware of the fact that the cart was still moving.

In opposition to the motion, the plaintiff entered into evidence her affidavit stating that based upon her previous experience with other mechanical grocery carts and her limited mechanical knowledge, she was unaware that the cart had a braking system. Rather, she believed "that the cart simply stopped when you let go of the throttle on the cart[.]"

7

A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

Even if a plaintiff shows that an alternative product exists which is capable of preventing the damage, the plaintiff must also satisfy the "risk/utility" analysis to determine whether the utility of the product is weighed against the risk of harm. La.R.S. 9:2800.56; *See also Guidry v. Coregis Ins. Co.*, 04-325 (La.App. 3 Cir. 12/29/04), 896 So.2d 173.

The plaintiff points to Dr. Price's evaluation of the Mart Cart and his affidavit filed in support of her opposition to summary judgment. In the affidavit, Dr. Price addressed two separate areas of the Mart Cart: the body design and the braking system. Dr. Price opined that the Mart Cart's skirting did not have a guard to prevent the cart from potentially entrapping one's foot underneath. He stated that this "design flaw" could have been prevented by designing it with a straight and narrow side akin to the design of the Lark EZ Shopper, another cart which was offered at Kroger at the time of the accident.

Next, Dr. Price stated that the braking system on the Mart Cart only provided a manual foot brake rather than having both an electronic and manual braking system. He further explained that if the Mart Cart would have had the dual braking system, it would have stopped immediately when the plaintiff released the throttle. Dr. Price

8

stated: "This technology was available and it was and is relatively inexpensive[.]"

APC notes that, although Dr. Price opined that certain "technology was available at the time," there is no evidence in the record as to the date in which the Mart Cart left the manufacturer. Further, it adds that the record also does not contain evidence as to the manufacturer's specifications and standards to demonstrate when and how the engineers designed the Mart Cart.

APC also points out the discrepancy between Dr. Price's evaluations and his affidavit. In his January 2002 evaluation, Dr. Price stated that the Mart Cart's braking system was "basic but reliable[.]" In his May 2002 evaluation, Dr. Price compared the Mart Cart to the newer Lark EZ Shopper "to determine if the Mart Cart contained either a defective or worn drive train, which allows the car to free roll easier than a similar, newer cart." After testing the two carts, Dr. Price found that "there was no noticeable difference in the resistance to rolling."

In speaking of the body design, Dr. Price stated that the plaintiff's injuries could have been prevented "easily and inexpensively" if the Mart Cart was designed with a straight and narrow side akin to the design of the Lark EZ Shopper. However, it cannot be inferred from Dr. Price's general statements whether the alternative design was available at the time the Mart Cart was manufactured. Further, Dr. Price did not state nor did the plaintiff present evidence on the cost of this alternative design at the time of the Mart Cart's manufacturing in order to balance its utility against the risk of harm. In his affidavit, Dr. Price stated that an alternative dual brake system design which "was available" could have "easily and inexpensively," been incorporated. Yet, again, the plaintiff failed to establish the point at which the Mart Cart left the manufacturer as is required under the LPLA.

9

Further, Dr. Price's affidavit provided that the plaintiff's injuries could have been prevented by an alternative brake design; however, according to his testing of the two carts, "there was no noticeable difference to the resistance to rolling." As such, it cannot be said that the plaintiff raised a genuine issue of material fact as to whether she would be able to prove at trial that an alternative was "capable of preventing the claimant's damage" as her own expert found no notable difference between the Mart Cart and an alternative. *See* La.R.S. 9:2800.56.

Accordingly, summary judgment was appropriate in regard to whether APC was liable to the plaintiff under the theory of whether the Mart Cart was unreasonably dangerous in design.

Failure to Warn

In her amended petition, the plaintiff alleged that APC was liable under the LPLA for failing to include labeling which contained a "clear, large, and unambiguous warning capable of being seen and understood by the elderly and disabled persons that the product is unstable and can roll with a minimal amount of force, even when turned off."

Louisiana Revised Statutes 9:2800.57 provides that:

A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

B. A manufacturer is not required to provide an adequate warning about his product when:

(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or

10

(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

However, "[a] 'mere allegation of inadequacy' is insufficient for a plaintiff to survive summary judgment on a failure-to-warn claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 264-65 (5th Cir. 2002). The plaintiff must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue of material fact to defeat summary judgment. *Id.*

Kroger attached to its motion for summary judgment a picture of the Mart Cart and a warning attached to the machine. However, the plaintiff offered no evidence in regard to the Mart Cart's warning. While there are pictures in the record, which were supplied by Kroger, the plaintiff offers no information to support her claim that these warnings were somehow inadequate. The plaintiff's expert, Dr. Price, did not mention the warnings in his affidavit or either evaluation. In her deposition, the plaintiff admitted that she did not read the warnings, rather she assumed the cart operated as other carts she had previously used. As the plaintiff cannot rely on her mere allegation, summary judgment was appropriate.

This assignment lacks merit.

### DECREE

For the foregoing reasons, the trial court's judgment granting the defendants' motions for summary judgment is affirmed. All costs associated with this proceeding are assessed against the appellant, Bertha Gruver.

**AFFIRMED.**