430 So.2d 1141 (1983)
James Allen FARR and Patricia A. Farr
v.
MONTGOMERY WARD AND COMPANY, INC.
No. 82 CA 0510.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Writ Denied June 10, 1983.
*1142 John N. Gallaspy, Bogalusa, for plaintiff.
Glen Patrick McGrath, New Orleans, for defendant.
Bradford H. Walker, New Orleans, for third-party defendants-appellees Reliance Ins. Co., Gerald L. Strug, Florence Strug Kerner and Ethel Strug Berg.
Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
This is suit for damages in tort pursuant to La.C.C. arts. 2315 and 2317 by James Allen Farr and his wife, Patricia, against Montgomery Ward and Company, Inc. (Montgomery), seeking to recover for damages incurred by Mrs. Farr when she fell in a dirt and gravel lot behind one of Montgomery's stores. Montgomery filed a third party demand against the owners of the property, from whom it was leasing the premises. The trial judge determined that Montgomery was not at "fault" under either La.C.C. art. 2315 or 2317 and rendered judgment dismissing the claim of the Farrs and the third party demand of Montgomery. This devolutive appeal followed.

*1143 I. FACTS
On November 23, 1979, Mrs. Farr and Regina Jackson left Crossroads, Mississippi, and went to Bogalusa in Washington Parish, Louisiana, to pay bills. Upon reaching Bogalusa, they went to the Montgomery store and parked in a parking area located at the store's rear. What occurred next is succinctly set forth in the trial judge's excellent reasons for judgment as follows:
"... Upon leaving the Farr vehicle, Mrs. Farr and her friend had to traverse a portion of the parking lot covered with dirt and gravel, a cement alley, as well as the area just outside the rear door of the Montgomery Ward store, which is made up of hard clay, with some pea gravel. After travelling a short distance from the Farr automobile, Mrs. Farr realized she had left her checkbook in the automobile and returned for it. Mrs. Jackson continued on her course to the Montgomery Ward store and gained entrance through the rear door. After getting her checkbook, Mrs. Farr alighted from her car and started toward the rear door of the Montgomery Ward store. She crossed the parking lot, the alley, and after reaching the loading zone near the rear door of the Montgomery Ward store, she attempted to step over a puddle of water, and slipped and fell...."

II. DUTY OF OWNER OR PERSON IN CUSTODY OF IMMOVABLE PROPERTY
The owner, or person having custody, of immovable property has a duty to keep such property in a reasonable safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. Haney v. General Host Corporation, 413 So.2d 624 (La.App. 1st Cir.1982); Boutte v. Pennsylvania Millers Mutual Insurance Company, 386 So.2d 700 (La.App. 3rd Cir.1980); Albritton v. J.C. Penney Company, Inc., 385 So.2d 549 (La.App. 3rd Cir.1980), writ denied 393 So.2d 727 (La.1980). This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. art. 2315. Shipp v. City of Alexandria, 395 So.2d 727 (La. 1981); Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976). The difference in proof between these theories of liability is that under La.C.C. art. 2315, it must be shown that the owner, or person in custody, either knew or should have known of the risk, whereas under La.C.C. art. 2317, a claimant is relieved of proving the defendant's scienter. Kent v. Gulf States Utilities Company, 418 So.2d 493, 497-498 (La.1982); Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir. 1983), decided 1983. Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the "custody" of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) that the defect in the property was a cause in fact of the resulting injury. In both negligent and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Hunt v. City Stores, Inc., 387 So.2d 585, 588 (La. 1980). Under either theory of liability, the court must decide if the risk which causes the injury is within the ambit of protection of the duty. Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir. 1982), writ denied 420 So.2d 982 (La.1982); Entrevia v. Hood, 427 So.2d 1146 (La.1983), (decided 1983).

III. LIABILITY OF MONTGOMERY
The only evidence offered at the trial describing an alleged defect in the premises was the testimony of Mrs. Farr and some photographs taken by Mr. Farr three or four days after the incident. Mrs. Farr testified that there was water all over in the parking area behind Montgomery's store; that she was looking down at the water; that she took a normal stride to cross over an area of water; and that in doing so, the heel of the back of her foot went into a hole and she fell. The photos, although a bit blurry, establish that water had accumulated to form a puddle of water. Mr. Tommy Richardson testified that the *1144 puddle was about 2½ to 3 feet long and 2 feet wide, but that a person could have walked around the puddle to get to the back door of the Montgomery store since there was plenty of other surface area to walk on.
Mrs. Lillie Scelfo, manager of the Montgomery store for 15 years, testified that she carefully inspected the area every day and never noticed any holes at the rear entrance. Mildred McLaurin, salesman at Montgomery since 1972, testified that she entered and left through the back door every day, 5 days a week, and never saw any holes there. Julie Russell Higgins, an employee of Tommy's Jewelers located next door, testified that she never saw any holes in the area. Tommy Richard, owner of Tommy's Jewelers, testified that he never saw what he considered to be a hole. All he observed that day was a puddle of water where Mrs. Farr fell. Brenda Gail Rester, another employee of Tommy's Jewelers who went to the aid of Mrs. Farr immediately after she fell, testified that there was a little low area, but it was not a hole. Dr. Wayne T. LeMaire, Mrs. Fair's physician whom she consulted about her injury, stated in his deposition that Mrs. Farr told him that she had slipped in some loose gravel and fell.
The trial judge reached the following factual conclusions from this testimony:
"... The Court further finds that no hole existed on the Montgomery Ward grounds, only low areas that would permit the accumulation of puddles of water. This determination is based upon the testimony of the Montgomery Ward employees as firmly corroborated by the testimony of the disinterested witnesses who worked next door at Tommy's Jewelers, and who gave assistance to Mrs. Farr following her fall.
. . . . . .
"... No hole existed at the point where plaintiff slipped, and it is clear that the condition of the premises near the rear door of the store was not such that would occasion an unreasonable risk of injury to Mrs. Farr. Further, the evidence indicates that the subject area was reasonably level, and there is absolutely nothing to suggest that Montgomery Ward or its lessors were negligent in their maintenance of the premises."
After reviewing the evidence of record, we cannot say that the trial judge's findings on the credibility of the witnesses or the facts of the case are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Batiste v. Guiteau, 413 So.2d 559 (La.App. 1st Cir.1982), writ denied 414 So.2d 776 (La.1982). The trial judge was also correct in determining that an uneven surface in a dirt and gravel lot which accumulated water, under the facts and circumstances of this case, did not create an unreasonable risk of harm to persons on the premises. See, for example, Shipp v. City of Alexandria, supra, and Haney v. General Host Corporation, supra.

IV. CONCLUSION
For the foregoing reasons, the judgment of the trial court is correct and is affirmed at the appellants' costs.
AFFIRMED.